May it please the Court, Rebecca Copeland on behalf of Dr. Melvin Chang. I'd like to respectfully reserve two minutes for rebuttal. I think the Court's decision in this case comes down to whether or not the District Court properly applied the standards governing summary judgment in the specific context of a retaliatory termination case. It didn't do so in this case because it resolved disputed fact issues in favor of Straub rather than in favor of Dr. Chang. It failed to draw reasonable inferences in favor of Dr. Chang. And it failed to give meaningful application to this Court's precedent that very little evidence is necessary on summary judgment in order to withstand judgment as a matter of law. This case isn't about whether or not Dr. Chang has definitively proven his case for Title VII violation against Straub. It's about whether or not it should not have been prematurely dismissed and instead should be decided on a full record upon a searching inquiry by the trier of fact. The District Court went through the appropriate McDonnell-Douglas framework, turning to the first element of that framework. Dr. Chang needed to show at least minimal evidence or very little evidence. Well, no, evidence from which a reasonable jury could find in his favor. It's not, you know, you've got barely more than nothing you get to go to trial. That's not the standard. Well, the standard is minimal evidence that are reasonable. You're correct. The standard is whether a reasonable jury could, if believed, if this person's evidence was believed, would be able to rule in his favor. And so let's just start with, I mean, there are multiple grounds on which the District Court found that your client. So why don't you start with the first one, just whether your client even engaged in any protected activity. So the evidence that he opposed discriminatory practice, that there was that minimal evidence present, for example, is that he did raise. . . Every time you say that I'm going to resist, it's just not the standard. I know that's what you'd like it to be, but that's not what the law says. A reasonable juror would have to ultimately believe that, but in this case he raised a. . . It's not. . . It doesn't matter. Just proceed. My apologies. And if that evidence is credited to Dr. Chang, it shows that he opposed based on age with regard to Topolinsky. It shows that he opposed based on age, wage, and race with relation to Suzy Matuchak. Let's take a look at. . . I'm going to find out that it's much easier to answer a question if you let the questioner ask it. Yes, Your Honor. All I was going to ask is maybe you're saying that there was evidence from which a reasonable jury could find that he protested the termination on this basis. So let's just take a look at what you're talking about because I was inclined to think the district court was right, that there just wasn't enough there, but I'd like to have you point me to what I should be looking at. So the evidence in the record, for example, for starters, comes from Dr. Chang's declaration on pages 169. There is also evidence from his. . . Don't just race through it. Let me turn to page 169. What do you got on this page that you want us to look at? That's where he indicates that he did question the acts that Straub was taking with regard to Topolinsky based on his age and wage concerns. Okay. Where? I'm looking at it, but where are you? Which paragraph? I'm sorry. I don't have the actual record excerpt with me. I just have reference to the page number. Yikes. You know, you come in to argue an appeal in a summary judgment case, boy, you certainly have to have the evidence before you that you can talk to the court about, don't you think? Yes, Your Honor. I mean, I'm looking at this page that you referred us to, and there is a paragraph that says, In 2006 I was informed. . . Is that what you're talking about? Yes. Okay. Part of why . . . I mean, it doesn't say anything about his having protested her termination on a protected ground, at least not that I'm seeing. It doesn't say those exact words, and I think that's part of the point is that magic words aren't required in these types of situations. He does mention that she was well-qualified due to her long-term experience, and then he also confirmed in his deposition testimony later on that his actions were specifically made in order to oppose Straub's discrimination of older minority women. Okay. Give me an ER site for the deposition. Those various record sites are 347, 402-403, 406-07, 431, and 435. Okay. He also referenced in the Welcome Home Susie document, which in total is record citation 208-248, but specifically on excerpts of record . . . There's not one sentence in that whole mess of 41 pages that even alludes to a protected ground, right? There's a sentence on page 221, and then it's also referenced in paragraph 37 on page 225. Right. And I would just . . . Respectfully, I would send this court back to the precedent that it is a minimal amount of evidence, and if there's something in the record and if there's a dispute as to whether or not that is what was going on, then those dispute of fact issues need to be resolved in favor of Dr. Chang, at least for purposes of summary judgment. Okay. How about causation? On causation, again, one of the problems, obviously, with the district court's order is that it ruled that because Yates didn't know that there was no causation, but the law is not that only the person terminating the individual needs to know, but just that a supervisor know, and there's many references in the record that the COO, the CEO, the HPHCMO, and the Hawaii Pacific Health . . . I'm just talking about the fact that his alleged protected activity occurred, what, 2006, 2007? That's correct. And when was he terminated? He was terminated in 2001 in March. 2011. Right. So that's a big gap, a much longer gap than our cases ordinarily say is okay for there to be a causal connection. So what do you have to resist summary judgment on that? So what we would point the court to is that although there was an extended period of time, that four months prior to that termination, the e-mail correspondence went between Dr. Chang and Ray Vara, in which the issue of the discriminatory actions that Dr. Chang had attempted to oppose back in 2007 with Susie Mataji, that that came back up only four months before he was terminated. But it has to be information going to a decision-maker, to somebody junior down that doesn't cut it because the decision-maker is the one that fired him. And that's Yates. Do you have anything at all that ties Yates into your claims? Yes. As a matter of fact, that e-mail in November 2010 was forwarded to Yates, so he was aware of that situation at least four months prior to the termination. During the termination hearing itself, although the references weren't explicit, it did come up related to the Susan Mataji matter at that point too. But I think really the more important factor is the e-mail in 2010. So when Yates provides a declaration that says he has no idea, I mean the record is actually contrary to that statement. You say in November 2010 there was an e-mail forwarded to him? Yes. And that's in the record where? That's on record page 249. And where else do you have a tie-in to Yates? In reference to the communication that was provided as part of the summary judgment proceeding, the transcript of the proceeding, I guess, of the conference that they had, that Dr. Chang submitted to the district court. And where is that in the record? It's, let me see. I believe it's on page 257. That's the reference specifically as part of the meeting that the two of them had when Dr. Chang was terminated. And then Dr. Chang also mentions it in his declaration as well, which is page 178. And how does that tie into Yates? That shows that he was aware of the actions that were occurring with Dr. Chang's advocacy on behalf of those individuals four months prior to his termination. So it brings the temporal gap. How do you find out that Yates was aware of this? Where in the record does it show he's aware of that? Well, I think it shows based on the fact that he was, that that email was forwarded to him. And if you have to make an inference one way or the other on that, that inference has to go in favor of Dr. Chang under the standards for these types of cases. Well, as I understood the briefs of your adversary, there was no tie-in to Yates. So that's why I was asking the question. And I understand that they made that argument as well, Your Honor. And my point is that there's at least some evidence showing the tie-in because in particular of that email that was forwarded to him. And if you're going to have that kind of disputed fact or that kind of inference, then the case law requires that the district court resolve those in favor of Dr. Chang. I understand that. It's just a question of whether it's there or not. And we'll let your adversary say why he said Yates was not tainted. Go ahead with your argument. Thank you. So in addition to having to show the prima facie case for causation and for the opposition, after Straub then brought forth the legitimate reasons, which were essentially two, it was the telephone conversation that he had in March of 2011 and then his what they called an atypical work environment. The burden then shifted back to Dr. Chang to show that there was a pretext for those legitimate reasons. In this context, this court has stated that any indication may suffice to raise a fact issue. And Dr. Chang is also permitted in that context to rely on the same evidence that he relied on related to the prima facie case. So, again, we would turn this court to that same evidence, which is the references to age, wage, race, and sex in the record, the fact that supervisors of Dr. Chang and many other higher-ups, including Yates, were aware that those actions and that that advocacy had occurred prior to his termination, and that because of that, effectively an inference could just as easily be drawn that the March 2011 conversation gave them their pretext. Well, yeah, I guess in theory, but the much more plausible scenario, especially given the time gap, I mean, normally if an employer wants to retaliate against an employee for having engaged in protected activity, they do it relatively close in time, right? That's the normal scenario. Here we have a three-plus-year gap at which your client was allowed to continue working, no problems whatsoever. Then late in the day, in 2011, these things occur. Your burden is to convince the jury that the reasons given by the employer in 2011 were not the real reasons, and I don't know what is there to us to draw that inference. They sat around for three years and just were, let's just wait for him to make this call and say something inappropriate to this other employee or to, you know, badmouth our CEO, and as soon as he did it, then we jumped all over him. That's when we fired him, and then we're just going to make up these reasons? That just seems like a real stretch to convince a jury of that. And I understand the court's concerns, and I would agree that the evidence isn't perfect. We have the 2010 email, though, that occurred prior to the March 2011 telephone call, and I think that when you're drawing that inference, at least for summary judgment, and again, although I understand that the standard applies also to what you're going to eventually have to convince the jury of, that's on a full record, and that's not necessarily what we have here. This summary judgment proceeding was filed only eight months after the case was filed, and if we had a full record, maybe we would, and when you have those disputed facts. When you get to summary judgment, you can't complain about the record not being full. If you didn't have enough time to conduct adequate discovery, Rule 56 provides a mechanism for you to get additional discovery. You apparently didn't avail yourself of that, so you're stuck with the record you've got now. You can't hypothesize about what, if you got to trial, what additional evidence you might come up with. When a defendant files a motion for summary judgment, it's make or break time. You've got to come forward with everything you've got at that point, and this is a pretty thin record, I think, as you've acknowledged. Unless my colleagues have further questions for you, you're running low on time. Judge Wallace. Why don't we stop, listen to your adversary, and then we'll give you some time for rebuttal. Good morning, Judge Wallace. Good morning, Judge Watford. Good morning, Judge Farris. My name is Darren Leong. I'm appearing on behalf of Straub Clinic and Hospital. I probably should have at least done that in order of seniority or something instead of going out that door. Sorry. That's okay. I appreciate the indulgence in allowing me to appear. Let me take the issues in the order in which the court raised them, because as you correctly noted, there are a number of dispositive reasons for the plaintiff to prevail, right? So first you have protected activity. Not for the plaintiff. Well, to prevail on appeal. I'm sorry. You have protected activity, causation, pretext. On the causation issue, knowledge, the appellant's statement of the law is, quite frankly, incorrect under the Ninth Circuit case law. It has to be the decision maker who has knowledge of the protected activity, and that's borne out in cases that we've cited, both Rad, R-A-A-D, and Reed, R-E-E-D, and it's even borne out in cases cited and relied upon by the appellant. So they rely upon Cohen versus Fred Meyer to say that, oh, if any supervisor knows of the protected activity, that's sufficient. But in that case, the court explained that thus at the time that Reynolds made the decision that directly resulted in the adverse action against the plaintiff, that he did not know that she had engaged in protected activity, and this breaks the requisite causal link. So the standard is the decision maker must know. That gets to Judge Wallace's question about what Yates knew. So in this case, it would be Yates? Yates, correct. And Yates came sort of in the middle or a little after the middle of all this activity, wasn't even around when it took place as to the advocacy that Dr. Chang relies upon? That's correct. So Yates became the chief medical officer just a few months before in 2010. He was not around in 2006. He was not around in 2007. And so specifically to get to the issue of what Yates knew, the record is undisputed that Yates did not know about any references to age or wage with respect to Topolinsky. Dr. Chang wrote an extensive report, and Yates agrees that he got a copy of it but said he didn't read that or much of it. That's correct. And Dr. Chang, as I understand it, even agrees that he probably didn't. That's also correct. So how do we decide what he did and didn't read, except that he says he didn't read anything about the claims that are invoked before us? Yes, Your Honor. You decide it based on what's in the record. And so you have Yates unequivocally saying that he never saw this specific reference in this 41-page document, which Dr. Chang has described himself as a tome. And then you have Dr. Chang himself admitting in his deposition that even Yates probably would have missed it. And then on top of that, you have a situation where Dr. Chang went searching through that 41-page document, and this is in the EEOC proceeding. And he was searching specifically for references of protected activity, and even he didn't find it. Well, he said he probably would have missed them himself because he admitted he did not read the report. That's correct. But on top of that, even after the fact, when Dr. Chang was at the EEOC, and this is in Exercise Record 382 to 385 and 141 to 146, which comes out of his deposition, the EEOC asked Dr. Chang, what is your protected activity? They gave him the definition of it and directed him to the EEOC manual. He then testified that he thoroughly went through that manual, spending hours to days reviewing things like Welcome Home Susie, this 41-page document. And he admits in his deposition that as he scoured that document, even he missed the reference to quote-unquote protected activity that they're relying on today. On that record, it is totally undisputed that Yates had no knowledge of this one reference in Welcome Home Susie. If I may, to the pretext analysis, again, the standard that the appellant cites is inaccurate. On pretext, the appellant has to show specific and substantial evidence of pretext, and we've cited cases including Manat, M-A-N-A-T-T, which this court will be very familiar with, Bradley, which we cited in our brief, which also stands for the same proposition, and also even the cases cited by plaintiff, excuse me, appellant, stand for the proposition that they have to present specific and substantial evidence of pretext. The cases they cited are Stegall, S-T-E-G-A-L-L, and Wallace v. J.R. Simplot, W-A-L-L-I-S. And so then the question is, what specific and substantial evidence of pretext is there? Well, in their brief, they cited none. The only thing they've said is you need to look at a portion of the prima facie case. But the Ninth Circuit has said before that that's insufficient. A minimally sufficient prima facie case doesn't establish pretext, and that's also in Stegall and Wallace. Instead, what they have to show, and as you pointed out, is how are Straub's reasons either false or are they retaliatory? But it's totally unrebutted in the record. If you go to Yates's declaration where he explains his thought process, he says that Dr. Chang had a deep-seated animosity for the organization and its CEO. That's a direct quote from his declaration. And that's borne out by the record. In the comments to Linda Kazina, Dr. Chang expresses animosity toward the CEO. He says he should take his big, fat paycheck, his words, not mine. And he also says that if the CEO wants to shake my hand, then he owes me an apology first. On top of that, Yates did also look at this November 2010 email. But there is no protected activity in the email. The only thing that email shows is deep-seated animosity. In the email itself, ER249, Dr. Chang, this is after a situation at a party where the CEO comes up to him and shakes his hand. And Dr. Chang, after three years of nothing, sends this email. And this is what he says to the CEO of the organization. That there are only a few people I have ever interacted with who I would prefer not to see at a social function. And you happen to be one of them. He then goes on to say, I tolerated your greeting. And then says, let me clue you in on something. And then in all caps says, I chose to stop talking to you. He also calls the CEO an 800-pound gorilla. And refers to a speech that the CEO gave and says that he almost vomited. And that it was a brainwashing seminar. And why did you pay for that? That is demonstrably deep-seated animosity for the CEO. Which Yates was fully competent to take into account and terminate his employment. The last piece of why he was terminated was this employment arrangement. And that also is undisputed in the record. And so what Yates found after this issue came up to him was, oh, my God, this person is an employee. Because Yates, as set forth in his declaration, states he didn't realize that Dr. Chang was an employee. And then looked at the situation and found, wow, this person works one day a month. There's record evidence that there is no other doctor in the entire organization who had that deal or that situation. And so Yates took that into account as well. I know the court did not address the IIED claim. So I'm happy to answer any questions about it or address it if you'd like. I have nothing further. Thank you very much. Do you have a little bit of time for questions? Thank you, Your Honor. May it please the court. On the decision-maker issue, we did cite case law that states that it has to be a supervisor or at least one supervisor of the employee who's terminated. And if Straub's argument is taken to its logical conclusion, what that would actually mean is that any time an employer wanted to fire somebody for an improper reason, they could just bring on somebody new. And then you have a decision-maker who is unaware of it who can then terminate them, and they're covered for any Title VII claim. I don't think that's what Title VII is meant to protect. And I don't think that that's what this court's case law says. And particularly, we cited the McDaniels case, which uses the words at least one supervisor. And here you have a number of the higher-ups and his supervisor, in addition to just Yates, who knew what had been going on and was aware of that prior to his termination. But if Yates is the one that makes the decision, how is it relevant if he doesn't know what other supervisors know? But he did know because there was evidence. That's the point. If he did know. But if he didn't know, it's irrelevant that he came in mid-term or the rest. You're indicating that there was something wrong with the case because he wasn't there all the time. I don't see that. It's what he knew when he released Dr. Chang. Isn't that true? Correct. And I think our position is that he did know at least enough to survive summary judgment in this case and to draw those disputed facts in favor of Dr. Chang. I understand. I just thought I misunderstood, but I understand you. Thank you. And also, with regard to the pretext issue, in addition to direct evidence, obviously a plaintiff can also rely on indirect evidence on the inconsistencies and contradictions. And that's really what we're talking about mostly here is that the evidence that was presented, when you look at it as a whole, it was inconsistent at least enough, again, to survive summary judgment. And, in fact, what the district court actually stated in its order was that Dr. Chang was largely terminated for these reasons. And I think the fact that it used that word is important because that shows that it resolved those fact issues and those inferences in favor of Dr. Chang, which it was not permitted to do at this stage in the proceeding. Okay. Thank you. Thank you very much for your argument. The case just argued will stand submitted.
judges: Wallace, Farris, Watford